UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

DAVID E. OLSON, *et al.*,         )
                                  )
            Plaintiffs,           )        3:11-cv-245 JWS
                                  )
      vs.                         )        ORDER AND OPINION
                                  )
MARK 0'BRIEN, *et al.*,           )        [Re:   Motion at docket 22]
                                  )
            Defendants.           )
_____)

## I.  MOTION PRESENTED

At docket 22 defendants Mark 0'Brien, James Cantor, and Richard Welsh (collectively "Defendants") move to stay further proceedings in this case pending resolution of certain litigation in the courts of the State of Alaska.  Plaintiffs David E. Olson and Absolute Environmental Services, Inc. (collectively "Plaintiffs") oppose the motion at docket 30.  Defendants' reply is at docket 36.  Oral argument has not been requested, and it would not assist the court.

## II. BACKGROUND

From the parties' papers the court discerns that the following facts are not in dispute.  David Olson is the owner of Absolute Environmental Services, an Alaska corporation ("Absolute").  North Pacific Erectors, Inc. ("NPE") contracted with the State of Alaska to perform work on the State Office Building ("SOB") in Juneau.  Among other

things, NPE's contract with the State required removal of asbestos from the SOB. NPE subcontracted with Absolute to accomplish the asbestos removal. Absolute encountered what it believed to be conditions different from the conditions assumed in bidding the work. In Absolute's view, the conditions encountered rendered removing the asbestos more costly.

Absolute called upon NPE to present a claim for additional compensation for the asbestos work under a state review procedure calling for a decision by the Commissioner of the Alaska Department of Transportation and Public Facilities (DOTPF). A hearing was held before a hearing officer who eventually recommended a decision in favor of NPE. After his initial review, the Commissioner remanded the matter to the hearing officer for further consideration. The hearing officer responded with a modified recommendation in favor of NPE. Chief Assistant Attorney General Cantor then assigned Assistant Attorney General Welsh to review the second recommendation. Welsh did so with the aide of DOTPF Contract Manager O'Brien. At some point responsibility for rendering a final decision was delegated by DOTPF Commissioner von Scheben to DOTPF Deputy Commissioner Richards. After consultation with Welsh, Richards ultimately rejected the recommendation from the hearing officer and adopted Welsh's alternative recommendation denying relief to NPE.

NPE appealed to the Superior Court contending, among other things, that Welsh and O'Brien had wrongfully participated in the decision-making process such that NPE was denied due process of law. After conducting a hearing into the actions of Cantor, Welsh, and O'Brien, the Superior Court rejected the denial of due process claim and affirmed Richards' decision. NPE appealed to the Alaska Supreme Court in February of

2012. Rather than await resolution in the state court system, Absolute filed this lawsuit which advances a claim pursuant to 42 U.S.C. § 1983 that Defendants denied Plaintiffs due process of law in the handling of the claim for additional compensation, a claim pursuant to 42 U.S.C. § 1981 that Defendants denied Absolute's contract rights, a claim of conspiracy to deny constitutional rights pursuant to 42 U.S.C. § 1985, a claim pursuant to 42 U.S.C. § 1986 for failing to prevent the violation of constitutional rights, a civil RICO claim brought pursuant to 18 U.S.C. § 1964 based on the allegation that Defendants' actions violated 18 U.S.C. § 1962, and state law tort claims based on the actions of Defendants. The exclusive focus for liability purposes in Plaintiffs' complaint is on the actions of Cantor, Welsh, and O'Brien. Although Plaintiffs' prayer for relief in the case at bar is multifaceted, it is clear that Plaintiffs' primary goal is the recovery of compensatory and punitive damages.[1]

### III. DISCUSSION

In the motion at docket 22, Defendants ask the court to stay this lawsuit, pending resolution of NPE's appeal. In *Landis v. North American Co.*,[2] the Supreme Court wrote that in exercising the inherent power to control its docket and to promote efficient use of judicial resources, a court has discretion to stay proceedings before it. The Court added that in exercising the discretion to stay:

> [the court] must weigh competing interests and maintain an even balance.
> * * * [The party seeking the stay] must make out a clear case of hardship
> or inequity in being required to go forward, if there is even a fair possibility
> that the stay . . . will work damage to someone else. Only in rare

---

[1] *See* doc. 1 at 14-15.

[2] 299 U.S. 248 (1936).

circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.[3]

In *Leyva v. Certified Grocers of California, Ltd.,*[4] the Ninth Circuit elaborated on a court's power to stay proceedings:

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide a just determination of the cases pending before it.[5]

The *Leyva* court cautioned that a stay should only be granted where, "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."[6]

In the context of staying civil proceedings to await the outcome of related criminal cases, the Ninth Circuit has identified five factors which should be considered in addition to the extent to which a litigant's Fifth Amendment rights are implicated:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation . . . (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;

---

[3] *Id.* at 254-55.

[4] 593 F.2d 857 (9th Cir. 1979)

[5] *Id.* at 863-64 (citations omitted).

[6] *Id.* at 864.

(4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."[7]

With some modification, the five-factor "Keating test" provides guidance in the context of competing civil proceedings.

Where, as here, there has actually been a decision that but for the fact that it is on appeal might have collateral estoppel implications, it is useful to keep in mind principles relating to the doctrine of issue preclusion. For issue preclusion to apply, four elements must be met: (1) the party against whom preclusion would apply must have been a party to or in privity with a party to the earlier litigation; (2) the issue to be precluded must be identical to one decided in prior litigation; (3) the issue must have been resolved in the earlier action by a final judgment on the merits; and (4) determination of the issue must have been essential to the final judgment.[8]

With the preceding in mind, the court now evaluates the motion for a stay. To begin with it is clear that what is principally at stake in this litigation is money. If Plaintiffs prevail, they will recover money which might compensate them for the myriad losses attributed to defendants' conduct in plaintiff Olson's declaration.[9] Looking forward, Mr. Olson has said, "if the stay is granted, I will in all likelihood be forced into bankruptcy and lose this last house in which my family and I now live."[10] The time frame Mr. Olson assumes is relevant to his efforts to stave off bankruptcy is through February

---

[7]*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995).

[8]*Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011).

[9]Declaration of David E. Olson, doc. 31 at ¶¶ 1-12.

[10]*Id.* at ¶ 13.

of 2014, the two years he has estimated it will take to process NPE's appeal in the Alaska Supreme Court.[11]  Assuming Mr. Olson is correct in estimating it will take the Supreme Court until February of 2014,[12] then allowing the case at bar to proceed would not make any difference in terms of Mr. Olson's efforts to avoid bankruptcy, because the case at bar would not get to trial until summer or fall of 2013, and an appeal to the Court of Appeals would not likely not be decided in less than an additional 12 months.  In these circumstances, what Plaintiffs stand to lose going forward is essentially the time value of the money they believe they will ultimately recover.  That is an injury which would be adequately compensated by prejudgment interest.[13]  Thus, while Plaintiffs naturally have an interest in the expeditious resolution of the issues raised in the case at bar, a delay is not likely to change the overall impact of a successful outcome for Plaintiffs.  Plaintiffs' interest in an expeditious resolution of the case at bar weighs much less heavily against granting a stay than Plaintiffs say it does.

Given the number and nature of claims included in the complaint–particularly the conspiracy and RICO claims, the burden on both sides in terms of litigation costs if this case proceeds will be sizable.  Litigating such complex claims would place an unusually heavy burden on defendants, so this consideration provides support for granting a stay.

If a stay is granted and the Superior Court is affirmed on appeal, the case at bar would be largely–probably entirely–foreclosed by issue preclusion, because the criteria

---

[11]*Id.* at ¶12.

[12]The estimate is a reasonable one.

[13]*Cf. CMAX, Inc. v. Hall*, 300 F.2d 265, 268–69 (9th Cir. 1962).

for use of issue preclusion set out above would be met.[14]  On the other hand, if the Supreme Court reverses the Superior Court, its opinion would necessarily cast considerable light on the proper parameters of the three defendants' conduct which should greatly expedite resolution of the case at bar.  Because a decision in the state case for either side would eliminate or at least significantly reduce the scope of the litigation in the pending lawsuit, the interests in preserving judicial resources and litigant resources strongly support granting a stay.

In this case, other persons who might be affected by the granting or denial of a stay appear to be other persons participating in the public contracting process in the State of Alaska.  The interests of those persons and the Alaska public as a whole favor a stay.  The reason is that a stay will eliminate the risk of inconsistent outcomes which would arise if this court's judgment turned out to be at odds with the final decision of the NPE case by the Alaska Supreme Court on any point not clearly controlled entirely by state law.

Next, it is the court's belief that a decision from the Alaska Supreme Court will be forthcoming no later than early 2014.  That time frame is reasonable in relation to the urgency of Plaintiffs' claims.  Finally, the concern that Plaintiffs are being asked to step aside while another party's efforts resolve the dispute has no significant impact here.

---

[14]The legality of the three individuals' conduct controls the outcome in both cases, that matter would have necessarily have been litigated on the merits in the state case by a party, NPE, in privity with Plaintiffs, and application of issue preclusion would be consistent with the integrity of the justice system by avoiding possibly inconsistent outcomes while sparing judicial and litigant resources.  See White, 671 F.3d at 927.

NPE has ample incentive to prosecute Absolute's claim arising from the contractor-subcontractor relationship.

## IV.  CONCLUSION

For the reasons set forth above, the motion to stay at docket 22 is **GRANTED** as follows: This case is stayed until the earlier of the date the Alaska Supreme Court announces its decision in the NPE case or March 1, 2014.  Counsel for both parties are tasked with responsibility to advise this court within three business days following the issuance of a decision by the Alaska Supreme Court in the NPE case.

DATED this 13th day of June 2012.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE