UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DAVID E. OLSON AND ABSOLUTE
ENVIRONMENTAL SERVICES, INC.,

       Plaintiffs,

vs.

MARK O'BRIEN, JAMES CANTOR, AND
RICHARD WELSH,

       Defendants.

3:11-cv-245 JWS

ORDER AND OPINION
[Re:Motion at Docket 138, 140, 147, &
149]

## I.  <u>**MOTION PRESENTED**</u>

Before the court are four motions.  The first filed is Plaintiffs David E. Olson
and Absolute Environmental Services, Inc.'s ("Plaintiff") motion for partial summary
judgment against defendant Mark O'Brien at docket 138.   Defendant Mr. O'Brien
responds at docket 163.  Plaintiff replies at docket 175.

The next motion filed is Defendants Mark O'Brien, James Cantor, and
Richard Welsh ("Defendants") motion for summary judgment at docket 140.   Plaintiff
responds at docket 166.  Defendants reply at docket 174.

The third motion is a motion *in limine* filed by Plaintiff at docket 147.
Defendants respond at docket 156.  Plaintiff replies at docket 165.

The final motion is Defendants' motion *in limine* filed at docket 149.
Plaintiff responds at docket 157.  Defendants reply at docket 162.

Oral argument was requested and granted on all four motions. Oral argument was heard on July 20, 2018.

## II. BACKGROUND

The background of this litigation was described at some length in the order at docket 77, and again more succinctly in the order at docket 120. There is no need to repeat it here.

## III. STANDARD OF REVIEW

### A. Motions for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[2] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4]

---

[1] Fed. R. Civ. P. 56(a).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Id.*
[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[5]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[6]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[7]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[8]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[9]

## B. Motions *in Limine*

Motions *in limine* are motions which seek to foreclose the use of certain testimony or documentary evidence at trial.  When a court rules on a motion *in limine,* it is necessarily a preliminary order which may be re-examined at trial if circumstances warrant reconsideration.

---

[5] *Id.* at 323.
[6] *Id.* at 323-25.
[7] *Anderson,* 477 U.S. at 248-49.
[8] *Id.* at 255.
[9] *Id.* at 248-49.

3

## IV.  MOTIONS AT DOCKETS 138 & 140

The majority of the claims in this case revolve around procedure.  Therefore, it is important to lay out the procedural history and how it comports with or diverges from the statutory requirements.

David E. Olson is the owner of Absolute Environmental Services, an Alaska corporation ("Absolute").  North Pacific Erectors, Inc. ("NPE") contracted with the State of Alaska to perform work on the State Office Building ("SOB") in Juneau.  Among other things, NPE's contract with the State required removal of asbestos from the SOB.  NPE subcontracted with Absolute to accomplish the asbestos removal.  Absolute encountered what it believed to be differing conditions than those assumed in bidding the work.  In Absolute's view, the conditions encountered rendered removing the asbestos costlier than the contract price.

Absolute called upon NPE to present a claim for additional compensation for the asbestos work.  The contract involves the procurement of services and is thus subject to the Procurement Code.[10]  The Procurement Code provides the procedure for addressing any contract claim.

---

[10] AS 36.30.005 - .995.

4

First, the contractor must raise a claim with the procurement officer. [11] In this case, NPE presented a claim to the procurement officer. The procurement officer denied Plaintiff's claim.

Second, the contractor may appeal the decision of a procurement officer through an administrative appeal. [12] NPE's claim involved a construction contract so the administrative appeal was to the Commissioner of the Department of Transportation and Public Facilities ("DOTPF"). [13] The claim goes to arbitration if it is for less than $250,000 and the contractor requests arbitration or if the claim is for more than $250,000 and both parties agree to arbitration. [14] Otherwise, the case is heard under AS 36.30.630. [15]

In this case, the claim was for more than $250,000 and the parties did not agree to arbitration so it was designated for a hearing. DOTPF Chief Contracting Officer Mark O'Brien was assigned to review the appeal of the procurement officer's decision. Mr. O'Brien determined that a hearing was justified. He assigned private attorney William Bankston to act as the hearing officer.

Third, a hearing officer's role is to "recommend a decision to the commissioner . . . , based upon the evidence presented. The recommendations must

---

[11] AS 36.30.620.
[12] AS 36.30.625.
[13] AS 36.30.625(a).
[14] AS 36.30.627(a)(1).
[15] AS 36.30.627(a)(2).

5

include findings of fact and conclusions of law."[16]  Mr. Bankston conducted a hearing from December 1-5, 2008.  On January 16, 2009, Mr. Bankston issued a recommendation for an award of $158,821 to Plaintiff.  Mr. Bankston did not submit final briefing from the hearing with his recommendation.  On January 20, 2009, Mr. O'Brien asked Mr. Bankston for the briefing.

On January 26, 2009, Mr. O'Brien emailed Mr. Bankston and asked: "If a simple walkthrough at the prebid would have revealed the dimples, does this failure to participate in the prebid waive their claim on the issue?"[17]  Later, when the dispute eventually reached it, the Alaska Supreme Court noted the remainder of the communication:

> [DOTPF] acknowledges that the deputy commissioner's "decision referred to [the] incorrect information" from an email exchange between O'Brien and the hearing officer. O'Brien inquired of the hearing officer:
>
>> During the prebid conference were other bidders offered the opportunity to observe the embossed pan deck at an alternate location? I see reference to an "alternate location" but I couldn't tell if that was offered at the prebid, or whether it was assumed that a contractor could have asked on their own to view it at an alternate location.
>
> The hearing officer responded that
>
>> [f]rom the evidence all bidders were offered a site inspection. The site inspection would not have revealed the embossed pan deck because it was covered with fire proofing. All bidders

---

[16] AS 36.30.675(a).

[17] *N. Pac. Erectors, Inc. v. State, Dep't of Admin.*, 337 P.3d 495, 501 (Alaska 2013).

6

were offered the chance to inspect pan deck that was not covered, which was at another location in the S[tate] O[ffice] B[uilding], so not technically the site, and the inspection had to be at a different time of the day and after normal office hours.

Thus it is undisputed that, based on this exchange, the deputy commissioner incorrectly stated that the Department had affirmatively offered participants at the prebid meeting an opportunity to view an uncovered pan deck.[18]

Nonetheless, after this correspondence and still on January 26, 2009, Mr. O'Brien emailed Chief Assistant Attorney General for Transportation James Cantor and expressed concern over Mr. Bankston's decision. He noted:

I received this recommended decision, but I have some real heartburn with its conclusion.

* * *

I'm thinking I may need to either reject or remand this back. The key issue for me is "duty to inspect." The contractor did not attend the prebid. At the prebid, the contractors were offered the opportunity to view an area of similar work where the fireproofing had been removed. This inspection would have clearly shown the dimpled pan (change condition in dispute). Only one of the Contractors at the prebid choose to view the uncovered area.

What I read puts the burden on the contractor to prove that they conducted a reasonable site inspection. If a reasonable site inspection would have revealed the condition, then the contractor cannot establish entitlement.

Mr. O'Brien, while restating the incorrect fact, was actually concerned about the legal standard used in the decision; specifically, the "duty to inspect."

---

[18] *Id.*

7

Mr. Cantor assigned Assistant Attorney General Richard Welsh to assist Mr. O'Brien. Mr. Cantor also supervised Assistant Attorney General Jeff Stark, who represented the Department in the appeal. An ethical wall was put in place to separate Mr. Cantor and Mr. Stark as advocates from Mr. Welsh as an advisor to DOTPF (Mr. O'Brien, Commissioner von Scheben, and Deputy Commissioner Richards).

Fourth, the Commissioner "may affirm, modify, or reject the hearing officer's recommendation in whole or in part, may remand the matter to the hearing officer with instructions, or take other appropriate action." [19] On March 5, 2009, DOTPF Commissioner von Scheben remanded the claim to Mr. Bankston. On May 8, 2009, Mr. Bankston issued his second recommendation finding in favor of Plaintiff.

On or about June 4, 2009, Plaintiff moved for Commissioner von Scheben to recuse himself. On June 11, 2009, Commissioner von Scheben recused himself and designated Deputy Commissioner Richards to make a final determination on the claim.

On June 24, 2009, Deputy Commissioner Richards received a draft final decision. The draft was written by Mr. Welsh. Mr. Welsh and Mr. O'Brien communicated about the decision. Neither Mr. Welsh nor Mr. O'Brien attended the hearing, listened to a recording of the hearing, or read a transcript of the hearing prior to drafting the final decision. Deputy Commissioner Richards did not attend the hearing, listen to a recording of the hearing, read a transcript of the hearing, or review any material other than Mr.

---

[19] AS 36.30.675(b).

8

Welsh's draft final decision. Deputy Commissioner Richards did ask Mr. O'Brien some questions regarding the draft. On June 25, 2009, Deputy Commissioner Richards signed and issued a final decision against NPE.[20]

NPE appealed the final decision of Deputy Commissioner Richards to the superior court sitting as an intermediate appellate court.[21] The appeal contained both substantive and due process claims. The superior court allowed discovery and:

> [H]eld a limited trial de novo to consider North Pacific's procedural arguments regarding (1) the timing of the deputy commissioner's decision, (2) the decision-making role of the deputy commissioner, (3) the role of Department of Transportation and Public Facilities staff in the decision, (4) the alleged deprivation of a hearing, and (5) the alleged ex parte contact. After trial, the superior court made thorough findings of fact on the agency appeals process, the agency's factual error, communications between the deputy commissioner and the staff, and the lack of bias in the agency decision-making process. Finally, the superior court concluded that the agency decision was not procedurally flawed.[22]

The superior court affirmed Deputy Commissioner Richards' final decision. The superior court rejected NPE's due process claims but noted some issues. "While the superior court was 'troubled' by some of the procedural issues, it ultimately held that the final agency decision 'was not legally flawed' and the State's 'resolution of the legal questions

_____

[20] The Commissioner "may affirm, modify, or reject the hearing officer's recommendation in whole or in part, may remand the matter to the hearing officer with instructions, or take other appropriate action." AS 36.30.675(b). "A decision by the commissioner of administration or the commissioner of transportation and public facilities after a hearing under this chapter is final." AS 36.30.380.

[21] *See* AS 36.30.685.

[22] *N. Pac. Erectors, Inc. v. State, Dep't of Admin.*, 337 P.3d 495, 502 (Alaska 2013).

9

raised by [North Pacific] was reasonable.'"[23]  In addition, "The superior court further found that North Pacific had 'not proved by a preponderance of evidence that [the deputy commissioner], [Chief Contracting Officer] O'Brien and [the assistant attorney general] were individually or collectively personally biased against [North Pacific].'"[24]  Regarding the communication between Mr. O'Brien and Mr. Bankston, "the court concluded that there was no traditional ex parte contact because the communication did not involve a party to the case. The superior court further concluded that the erroneous factual finding that was likely caused by the exchange did not substantially impact the agency decision."[25]  Finally, the superior court acknowledged that the argument that Mr. O'Brien, Mr. Welsh, and Deputy Commissioner Richards failed to review the record had "more than a little surface appeal" but the argument was rejected for two reasons: "(1) 'the oral testimony was not the entire record,' and the agency decisions were based on the hearing officer's decision and the available exhibits; and (2) the 'problem is that to enforce an adequate role by the final decision maker would almost always require exploration into the deliberative process.'"[26]  Thus, the superior court determined that NPE was "provided a hearing process that complie[d] with due process."[27]

---

[23] *Id.*
[24] *Id.* at 503.
[25] *Id.*
[26] *Id.*
[27] *Id.*

10

NPE then appealed the superior court decision to the Alaska Supreme Court. The Alaska Supreme Court affirmed the decision of the superior court and the final decision of DOTPF. The Court provided two reasons for affirming: (1) the State had no duty to disclose and (2) NPE "is barred from recovery for any alleged differing site condition because it did not substantially comply with the damages and records provisions of the contract."[28]

The more pertinent analysis for this case is that the State has no duty to disclose. The Court held that NPE:

> [C]ould have requested photos or an inspection of an exposed pan deck, spoken to other contracting companies that had previously performed asbestos abatement for the Department in Juneau, or researched conditions of similar buildings in the area. Indeed, one of the other bidders for this abatement subcontract had worked in the same building and was aware of the dimpled condition of the pan deck. We conclude that North Pacific could have conducted research on its own and was not dependent on the Department as the only reasonable avenue for acquiring information on the surface of the pan deck. Accordingly, we hold that the State had no duty to disclose information regarding the pan deck surface.[29]

The Alaska Supreme Court did not reach the procedural issues because it was unnecessary. "While the deputy commissioner made a factual error, and the 'clarification' email between the hearing officer and the agency raises some concerns, we do not need to reach the procedural issues because we reject North Pacific's superior knowledge

---

[28] *Id.* at 509
[29] *Id.* at 506.

11

argument as a matter of law and because North Pacific is barred from recovery for its differing site condition claim."[30]

## A. 42 USC § 1983[31]

42 U.S.C. § 1983 provides procedural due process protections. The required elements of a successful 42 U.S.C. § 1983 claim are: "(1) a violation of rights protected by the Constitution or created by federal statue, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."[32] The analysis is case dependent. "Due process is a flexible concept that varies with the particular situation."[33] "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner."[34] Importantly, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely

---

[30] *Id.* at 509.

[31] Plaintiff also argues violation of Due Process under the 14th Amendment to the United States Constitution and Article I, Section 7, of the Alaska Constitution. The Procedural Due Process Clause of the 14th Amendment applies only to States. The lawsuit is not against the State of Alaska, it is against the Defendants, therefore 42 U.S.C. § 1983 is the proper federal law for this case. Article I, Section 7, of the Alaska Constitution may apply, but other than invoking the provision (although the Plaintiff does so incorrectly by citing to Section 7 of the Alaska Constitution), Plaintiff makes no further mention of the Alaska Constitution. Thus, the focus of the analysis is on 42 U.S.C. § 1983.

[32] *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

[33] *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (internal citation omitted).

[34] *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010) (quoting *Brewster v. Bd. Of Educ.*, 149 F.3d 971, 984 (9th Cir. 1998)).

provides a method for vindicating federal rights elsewhere conferred."[35] "In § 1983 cases, it is the constitutional right itself that forms the basis of the claim."[36]

After establishing that there is a protected interest at stake, the Ninth Circuit uses the *Mathews v. Eldridge* three-part balancing test to determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation."[37] The *Mathews* factors are: (1) the private interest affected and the injury threatened by the action, (2) the risk of error in using the procedure and the value of additional safeguards, and (3) the financial and administrative burden of additional process and the interest in efficient adjudication.[38]

Administrative hearings are not afforded precisely the same process as is involved in a court hearing. "Due process in the administrative context does not demand that every hearing comport to the standards a court would follow, but rather that the administrative process afford an impartial decision-maker notice and the opportunity to be heard, procedures consistent with the essentials of a fair trial, and a reviewable

---

[35] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citations omitted); *Crumpton*, 947 F.2d at 1420.
[36] *Crater v. Galaza*, 508 F.3d 1261, 1269 (9th Cir. 2007).
[37] *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1979)).
[38] *Id.*

13

record."[39]  Due process violations in an administrative hearing "should be alleged with particularity and a showing of prejudice."[40]

Plaintiff alleges the denial of due process and a fair hearing in violation of 42 U.S.C. § 1983.  Those violations involve: (1) usurping the final administrative decisions-making authority, (2) disregarding the hearing officer's recommended decision, (3) denying an impartial decision-maker, (4) disregarding testimony presented at the hearing (changing findings of fact without reviewing transcripts), (5) disregarding legal arguments presented, and (6) incorporating and relying upon false factual propositions never presented in evidence.[41]

First, usurping the final administrative decision-making authority and disregarding the hearing officer's recommended decision can be addressed jointly because they both deal with statutory authority.  As an initial matter, the hearing officer does not have final decision-making authority.  A hearing officer "shall *recommend* a decision to the commissioner . . . , based upon the evidence presented.  The

---

[39] *Nash v. Matanuska-Susitna Borough*, 239 P.3d 692, 699 (Alaska 2010) (citing *Keiner v. City of Anchorage*, 378 P.2d 406, 409–10 (Alaska 1963)); *see also St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 73, (1936) (Brandeis, J., concurring) ("The inexorable safeguard which the due process clause assures is, not that a court may examine whether the findings as to [specific facts] are correct, but that the trier of the facts shall be an impartial tribunal; that no finding shall be made except upon due notice and opportunity to be heard; that the procedure at the hearing shall be consistent with the essentials of a fair trial; and that it shall be conducted in such a way that there will be opportunity for a court to determine whether the applicable rules of law and procedure were observed.").

[40] *Id.* (citing *Keiner*, 378 P.2d at 409).

[41] Complaint, p. 11, ¶ 72.

14

*recommendations* must include findings of fact and conclusions of law."[42]   The final

decision is made by the Commissioner.  The Commissioner "may affirm, modify, or reject

the hearing officer's recommendation in whole or in part, may remand the matter to the

hearing officer with instructions, or take other appropriate action."[43]  On March 5, 2009,

DOTPF Commissioner von Scheben remanded the claim to Mr. Bankston, as he is

statutorily authorized to do.   On May 8, 2009, Mr. Bankston issued his second

recommendation.  On or about June 4, 2009, NPE moved for Commissioner von Scheben

to recuse himself.  Plaintiff asked for the recusal; Plaintiff cannot sustain a due process

violation created by its own request.   On June 11, 2009, Commissioner von Scheben

recused himself and designated Deputy Commissioner Richards to make a final

determination on the claim.  On June 25, 2009, Deputy Commissioner Richards signed

and issued a final decision against NPE.[44]  Deputy Commissioner Richards consulted

with Mr. O'Brien and asked questions regarding the draft.  "The superior court determined

. . . that the involvement of institutional subordinates did not taint the agency's neutrality

or 'overstep any statutory assignments of authority.'"[45]  Plaintiff presents no evidence and

---

[42] AS 36.30.675(a) (emphasis added).
[43] AS 36.30.675(b).
[44] The Commissioner "may affirm, modify, or reject the hearing officer's recommendation in whole or in part, may remand the matter to the hearing officer with instructions, or take other appropriate action."  AS 36.30.675(b). "A decision by the commissioner of administration or the commissioner of transportation and public facilities after a hearing under this chapter is final."  AS 36.30.380.
[45] *N. Pac. Erectors, Inc. v. State, Dep't of Admin.*, 337 P.3d 495, 503 (Alaska 2013).

cites no case law that indicates that the involvement of subordinates in the decision-making process is a violation of a Constitutional right under 42 U.S.C. § 1983. In contrast to Plaintiff's argument, the case law supports the use of subordinates in the decision-making process.[46]

Second, Plaintiff presents no evidence to demonstrate a denial of an impartial decision-maker. Plaintiff's assertion is essentially that Mr. O'Brien, Mr. Welsh, and Mr. Cantor, as government employees, cannot be impartial in assessing any action involving the government. The extension of the theory is that no administrative issue could ever be reviewed because government employees are necessarily involved in every administrative appeal. "The superior court further found that North Pacific had 'not proved by a preponderance of evidence that [the deputy commissioner], [Chief Contracting Officer] O'Brien and [the assistant attorney general] were individually or collectively personally biased against [North Pacific].'"[47] Plaintiff points to Mr. O'Brien's statement in an email to Mr. Cantor describing Mr. Bankston's recommendation and noting, "I have

---

[46] *See, e.g., Oceana, Inc. v. Pritzker,* No. 2017 WL 2670733, at *4 (N.D. Cal. June 21, 2017) ("[A] decision-maker can be deemed to have "constructively considered" materials that, for example, were relied upon by subordinates or materials upon which a report that was considered rely heavily."); *Earth Resources Co. of Alaska v. State, Dept. of Revenue,* 665 P.2d 960, 962 n.1. ("[D]ue process protections do not require an agency head to hear and decide each case. The Commissioner is permitted to make intra-agency delegations and to rule otherwise would rob the Department of its effectiveness."); Richard J. Pierce, ADMINISTRATIVE LAW TREATISE § 8.6 at 726-27 (5th ed. 2010) ("The role of a typical agency's staff is much greater than the role of the staff of a trial court or of an appellate court." An agency head "can, and often must, defer to trusted subordinates.").

[47] *Id.* at 503.

16

some real heartburn with its conclusion." Plaintiff argues that the heartburn is over a decision that goes against the State which Mr. O'Brien must oppose because, as a government employee, he does not want decisions to go against the State. But, Plaintiff provides no proof to support this assertion. Instead, a plain reading of the email reveals a far more plausible conclusion. Mr. O'Brien notes, "I'm thinking I may need to either reject or remand this back. The key issue for me is 'duty to inspect.'" On the face of the email it is evident that Mr. O'Brien has heartburn from the possibility of rejecting or remanding the recommendation; in particular, based on the "duty to inspect." The email does not demonstrate bias against Plaintiff. Plaintiff presents no new evidence here to demonstrate bias. The State specifically established an ethical wall to separate Mr. Cantor and Mr. Stark as advocates from Mr. Welsh as an advisor to DOTPF (Mr. O'Brien, Commissioner von Scheben, and Deputy Commissioner Richards) demonstrating effort to remove bias from the decision-making process.

Third, Plaintiff alleges that Defendants disregarded testimony presented at the hearing (changing findings of fact without reviewing transcripts). Plaintiff provides no evidence pointing to any findings of fact that were changed. Plaintiff never demonstrates how any of Plaintiff's alleged, but never specified, changes resulted in prejudice against Plaintiff. Plaintiff has failed to allege these purported violations "with particularity and a showing of prejudice." [48]

---

[48] *Id.* (citing *Keiner*, 378 P.2d at 409).

Fourth, Plaintiff presents no evidence to establish disregard for legal arguments presented. The alleged due process violations were examined by the superior court in a hearing *de novo*. Where, "the superior court concluded that the agency decision was not procedurally flawed."[49] The decision to permit a hearing *de novo* on these issues is the appropriate remedy. "[A] party is 'entitled to a trial de novo, in whole or in part, if he [has] been denied the opportunity to present to the [Board] relevant and material evidence supporting his claim....'"[50] Plaintiff presents no alleged legal arguments that were disregarded.

Finally, Plaintiff complains of the incorporation and reliance upon false factual propositions never presented in evidence. "[T]he deputy commissioner incorrectly stated that the Department had affirmatively offered participants at the prebid meeting an opportunity to view an uncovered pan deck."[51] The factual error that the Department had affirmatively offered participants at the prebid meeting an opportunity to view an uncovered pan deck did not impact the final decision and was thus a harmless error.[52] The Alaska Supreme Court provided two reasons for affirming: (1) the State had no duty

---

[49] *N. Pac. Erectors, Inc. v. State, Dep't of Admin.*, 337 P.3d 495, 502 (Alaska 2013).

[50] *Nash v. Matanuska-Susitna Borough*, 239 P.3d 692, 699 (Alaska 2010).

[51] *N. Pac. Erectors, Inc.*, 337 P.3d at 502.

[52] "Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61

to disclose and (2) NPE "is barred from recovery for any alleged differing site condition because it did not substantially comply with the damages and records provisions of the contract."[53]

The duty to disclose holding, the only holding that could conceivably have been impacted by the factual error, was not in any way based on the factual error.  As the Alaska Supreme Court explained, Plaintiff had many different resources independent from the State to acquire information regarding the surface of the pan deck.  Thus, "the State had no duty to disclose information regarding the pan deck surface."[54]  The Alaska Supreme Court acknowledged the factual error, but also properly dismissed that concern because it had no impact on the final decision.[55]  The Alaska Supreme Court ultimately held that it did "not need to reach the procedural issues because [it] reject[ed] North Pacific's superior knowledge argument as a matter of law and because North Pacific is barred from recovery for its differing site condition claim."[56]  The inclusion of the factual error was harmless and does not constitute a violation of 42 U.S.C. § 1983.

---

[53] *Id.* at 509
[54] *Id.* at 506.
[55] The Alaska Supreme Court held in *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1025 (Alaska 2005) that "when an administrative proceeding fails to conform to the minimum requirements of procedural due process, the superior court *may not review the case on the agency record* but must instead *remand* for a new agency hearing *or grant a trial de nova as needed to cure the procedural defect*."  The Alaska Supreme Court, in line with its own mandate, reviewed the administrative decision and the trial *de novo* on the alleged procedural violations and held that no procedural violation impacted the correct final decision.
[56] *Id.* at 509.

19

## B. 42 U.S.C. § 1981

Plaintiff alleges a violation of 42 U.S.C. § 1981.  That statute states in its entirety:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff's only argument appears to be that 42 U.S.C. § 1981 "is inconsistent with the requirements of equal protection, in that it protects a subset of citizens within racial minority groups from certain types of civil rights violations while leaving other citizens for no reason other than a racial distinction, unprotected."  Plaintiff cites no authority to support this argument.  Furthermore, Plaintiff provides no evidence whatsoever that a violation of 42 U.S.C. § 1981 occurred.  Plaintiff has no claim under 42 U.S.C. § 1981.

## C. 42 U.S.C. § 1985

Plaintiffs assert a conspiracy claim under 42 U.S.C. § 1985.  A conspiracy claim under 42 U.S.C. § 1985(3) requires allegations of: (1) a conspiracy, (2) for the purpose of depriving a person or class of equal protection or privileges and immunities; (3) an act in furtherance thereof; and (4) injury or deprivation of rights.[57]  Plaintiff provides no evidence to support a claim under 42 U.S.C. § 1985(3).  Plaintiff asserts, as it did

---

[57] *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971).

20

under 42 U.S.C. § 1981, that 42 U.S.C. § 1985 "is inconsistent with the requirements of equal protection, in that it protects a subset of citizens within racial minority groups from certain types of civil rights violations while leaving other citizens for no reason other than a racial distinction, unprotected."[58]  Plaintiff provides no case law to support this assertion.  Plaintiff provides no evidence that indicates a violation of 42 U.S.C. § 1985.  Plaintiff's claim under 42 U.S.C. § 1985 fails.

### D. Conversion

Plaintiff claims "conversion of property by fraudulent procedure and fraudulent attorneys' fee award."  A claim of conversion has the following elements: (1) possessory interest in the property; "(2) that the defendant[s] interfered with the plaintiffs right to possess the property; (3) that the defendant[s] intended to interfere with plaintiffs possession; and (4) that the defendants['] act was the legal cause of the plaintiffs loss of the Property."[59]  Plaintiff does not cite a single case to support the conclusion that even a wrongfully prevailing party has committed conversion.  Furthermore, the Alaska Supreme Court reviewed the substantive claims and determined that the final decision was correct and the State was the prevailing party.

---

[58] Plaintiff's Memo. in Op. of Mot. for Summary Judgment, p. 27.
[59] *Silvers v. Silvers,* 999 P.2d 786, 793 (Alaska 2000).

### E.  The tort of intentional interference with a business expectancy

The tort of intentional interference with a prospective business opportunity, has six elements: "(1) an existing prospective business relationship between it and a third party; (2) defendant's knowledge of the relationship and intent to prevent its fruition; (3) failure of the prospective relationship to culminate in pecuniary benefit to the plaintiff; (4) conduct of the defendant interfering with the prospective relationship; (5) damages caused by the defendant; and (6) absence of privilege or justification for the defendant's conduct."[60]  Plaintiff appears to assert that the "existing *prospective* business relationship" is the contract that existed between Plaintiff and the State.  But, the relationship is not prospective, the relationship was completed.  The dispute was over payment under the contract at the completion of the contract.  There is no prospective business opportunity to support a tort claim.

### F.  Prima Facie Tort

Plaintiff concedes that there is no cause of action for prima facie tort.

### G.  Punitive Damages

Defendants are granted summary judgment on all of Plaintiff's claims, therefore punitive damages are not available.

---

[60] *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003).

**H. Qualified Immunity**

Defendants are granted summary judgment on all Plaintiff's claims on substantive grounds, therefore qualified immunity analysis is unnecessary.

## V.  MOTIONS AT DOCKETS 147 & 148

The court has granted summary judgment to Defendants.  It follows that the motions *in limine* are moot.

## VI.  CONCLUSION

Defendants' motion for summary at docket 140 is GRANTED.  Plaintiff's motion for partial summary judgment at docket 138 is DENIED.  The motions *in limine* at dockets 147 and 149 are DENIED as moot.

The Clerk of Court will please enter judgment for Defendants.

DATED this 31st day of July 2018.


/s/  JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT